**In the Matter of UNION COUNTY WHOLESALE TOBACCO & CANDY CO., INC., a Corporation of the State of New Jersey, Debtor.**

**In the Matter of STROUDSBURG WHOLESALERS, INC., a Corporation of the Commonwealth of Pennsylvania, Debtor.**

**Bankruptcy Nos. 80–03134, 80–03135.**

United States Bankruptcy Court, D. New Jersey.

Jan. 12, 1981.

See also, Bkrtcy., 8 B.R. 442.

Kleinberg, Moroney, Masterson & Schachter by Sheldon Schachter, Millburn, N. J., for debtors.

Pitney, Hardin & Kipp by Timothy R. Greiner, Morristown, N. J., for movants.

RE: ON MOTION TO CONVERT TO CHAPTER 7

D. JOSEPH DE VITO, Bankruptcy Judge.

This matter comes before the Court on identical motions, each filed on October 7, 1980, by counsel for R. J. Reynolds Tobacco Company, Liggett & Myers Tobacco Company, Brown & Williamson Tobacco Corporation and P. Lorillard Company, creditors of the above debtors, seeking to convert each of the above captioned closely related Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code. Though the above proceedings have not been consolidated, be-

cause of the similarity of the facts and issues, in the interest of brevity this Opinion is dispositive of each motion.

At the hearing of November 25, 1980, counsel for movants withdrew without prejudice a motion to compel production of documents by First Eastern Bank. In addition, counsel for the debtors in possession, Union County Wholesale Tobacco & Candy Co., Inc. (Union) and Stroudsburg Wholesalers, Inc. (Stroudsburg), stipulated that neither of the debtors currently maintains an ongoing business.

The following facts summarizing the relevant history of the instant controversy are essentially undisputed:

1. At a hearing on September 9, 1980 the Court considered the cash sale of Union's inventory, consisting of sun glasses, syrups, pipes, tobacco products, candy and related sundries, to the Jersey City Tobacco Company, to which no objection was raised by any party in interest, including the movants. The Order approving the sale was entered on September 16, 1980. At the same hearing this Court also considered the sale of Stroudsburg's inventory, consisting of cigars and cigarettes, which sale, similarly unopposed, was approved as evidenced by an Order of this Court dated September 16, 1980.

2. At the hearing on the motions to convert of November 25, 1980, Henry Kelner, president and chief executive officer of the debtor corporations, estimated that the sale of Union's inventory would ultimately result in the approximate sum of $250,000.00. Acknowledging that the aforementioned amount was at odds with the value of the inventory set forth in Schedule B–2 of Union's statement of financial affairs ($611,-677.00), in accounting for the noted discrepancy, Kelner testified that some of the schedule inventory had been sold prior to the sale to Jersey City Tobacco. An estimated $40,000.00 of inventory remains at Union's facility at Elizabeth, New Jersey, protected by an alarm system. As of the date of the hearing, Union had been unsuccessful in its attempt to find a bulk buyer of that inventory.

3. Harry Kolodny, president of Jersey City Tobacco Company, bulk purchaser of Union's inventory, testified that because of the unsalable nature of much of the merchandise obtained from Union, including the infestation of much of the candy portion of that inventory, approximately $175,000.00 was actually paid to Union as against invoices in the amount of $314,409.75.

4. Schedule A of Union's statement of financial affairs sets forth a cigarette tax obligation due and owing to the state of New Jersey in the amount of $489,530.00, accruing in the month of July and a portion of August, suggesting a sizable cash flow from cigarette sales. Union's president, unable to account for this tax liability incurred in the short period of time indicated, suggested "a leakage" in the cash flow and the disappearance of a considerable amount of inventory and cash during the month of July. Kolodny, however, was unable to trace or identify the nature of the leakage, nor account for the missing inventory and cash.

5. Schedule A of the statement of financial affairs filed by Stroudsburg indicates a cigarette tax liability owing to the state of Pennsylvania in the amount of $132,000.00.

6. John Gelchion, an analyst employed by the office of the United States Trustee for the Districts of New Jersey and Delaware, testified that interim financial reports filed by the debtors thus far fail to observe the guidelines set forth by the United States Trustee in that, among other things, they do not contain information relative to inventory.

7. Pursuant to the Order of this Court dated November 25, 1980, the United States Trustee appointed a trustee in each of the respective estates, relieving debtors of continued possession as debtors in possession.

8. The initiating Chapter 11 petitions in each of the above captioned proceedings were filed on August 7, 1980; thereafter on October 28, 1980 the plan of reorganization dated September 28, 1980 was filed, which in each instance provides for orderly liquidation.

## DISCUSSION

11 U.S.C. § 1112[b] (Bankruptcy Code of 1978) provides in pertinent part:

Except as provided in subsection [c] of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a·case under Chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. ·

In considering the essential element of "best interest of creditors", we resort to the provisions of the former Bankruptcy Act, specifically § 366[2], 11 U.S.C. § 766 (1970), where it is specified as a condition precedent to court confirmation of a plan. The requirement has, as stated in 9 Collier on Bankruptcy, § 9.17 at 281 (14th ed.) been "broadly interpreted to require a comparison between what creditors would receive under the composition offer and what they would receive in liquidation of the estate. Where the composition offer would pay creditors considerably less than they might reasonably expect to realize in liquidation, the composition under [§ 366[2]) was not for the best interests of creditors," quoted with apparent approval by the court in *In re Gilchrist Co.*, 410 F.Supp. 1070, 1074, n. 2 (E.D.Pa.1976). The statutory best-interests-of-creditors test found in § 366[2] of the former Bankruptcy Act has been incorporated in § 1129[a][7][ii] of the Bankruptcy Code, requiring comparison of liquidation value and reorganization value as a touchstone for plan confirmation. See 53 Am. Bankr.L.J. 133, 137 (1979). This standard would appear to be equally applicable when considering a motion to convert a Chapter 11 case to one under Chapter 7 for cause, pursuant to § 1112[b][1], a position advanced by movants' counsel.

Movants point specifically to § 1112[b][1] as the appropriate ground for conversion. That section provides in substance for the conversion of a Chapter 11 case to one under Chapter 7, or its dismissal, whichever is in the best interest of creditors and the estate, for cause, including:

[1] Continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

Two indicia of the losses required to be shown under the standards of § 1112[b][1] are noted in Collier on Bankruptcy as (a) a negative cash flow by the debtor after entry of the Order for Relief in the Chapter 11 case, and (b) depreciation in value of the debtors' assets notwithstanding a possible positive cash flow, either condition sufficing to satisfy the first element set forth in § 1112[b][1]. 5 Collier on Bankruptcy, § 1112.03 at 1112–13 (15th ed. 1980).

■ It is undisputed that upon the filing of the Chapter 11 petitions, debtors' operations ceased, followed by the sale of the inventory of each, approved upon notice, without objection by any party in interest and in accord with the planned liquidation. Though it may appear that, in prescribing a continuing loss or diminution of the estate as cause for conversion or dismissal, § 1112[b][1] contemplates reorganization rather than orderly liquidation, in the factual context here the diminution or loss complained of, if any, results from liquidation rather than business operation. As provided in § 1123[b][4], a plan of arrangement providing for orderly liquidation is clearly permissible and conceptually in the best interest of creditors. As observed in the *Matter of Sterling Homex Corp.*, 591 F.2d 148, 152 (2d Cir. 1978), a plan of arrangement as opposed to forced liquidation preserves to a debtor's claimants value which would otherwise be lost upon the latter. At page 152 of its Opinion, the *Sterling Homex* court, in support of the proposition that a reorganization may provide for orderly liquidation, quoted from Collier on Bankruptcy, Vol. 6A, § 10.02 at 14 (14th ed.):

. . . . A upset price is assured; quick and perhaps piecemeal liquidation avoided; the rigidity and difficulties inherent in other methods are eliminated; and any going-concern values which may be temporarily sustained are squeezed dry for the benefit of those entitled to share . . . .

■ Clearly, within the contemplation of permissible orderly liquidation, movants have failed to sustain the burden of proving a diminution of the estate sufficient to convert the Chapter 11 cases to straight liquidation proceedings, pursuant to Chapter 7.

Counsel for the movants expresses a concern with the sizable unpaid cigarette taxes owed by the debtors to the states of New Jersey and Pennsylvania. The status and extent of tax liens on the debtors' property has not been established, nor the extent to which the trustee in invoking his avoiding powers under § 545 of the Code may avoid the unsupported tax liens. If, in fact, the tax claims are unsecured, § 507[a], in which the established priorities are set forth, will apply. If, on the other hand, the tax claims are secured, a determination of whether, under the facts, § 545 of the Code applies is required.

It is the opinion of this Court that, for the reasons above delineated, together with the devolution of responsibilities on the trustee appointed herein, reorganization through orderly liquidation appears at this time to be the more efficacious course. The motion to convert is accordingly denied. Submit an Order in accordance therewith.