**In the Matter of K. C. MARSH CO., INC., Debtor.**

**Bankruptcy No. 4–80–807–G.**

United States Bankruptcy Court, D. Massachusetts.

July 1, 1981.

Jack Wolfson, Worcester, Mass., trustee.

Stephen J. Gordon, Worcester, Mass., for debtor.

## MEMORANDUM AND ORDER CONCERNING THE TRUSTEE'S MOTION TO CONVERT THE CASE FROM CHAPTER 11 TO CHAPTER 7

PAUL W. GLENNON, Bankruptcy Judge.

The trustee filed a motion on April 9, 1981 to convert the voluntary petition of K. C. Marsh Co., Inc. from a Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 101 et seq. Hearings on the motion were heard on May 11, June 1, and June 15, 1981. The trustee has filed suggested finding of facts and the debtor itself has filed answers thereto.

### FACTS

The K. C. Marsh Co., Inc. (the "debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101 et seq. After application by the Office of the United States Trustee, a Chapter 11 trustee was appointed on January 12, 1981, to arrange the affairs of the debtor.

The debtor is a small closely held corporation that runs a jewelry and gift shop in Holden, Massachusetts. It has been in business since 1978, but has never operated at a profit. In the debtor's petition, unsecured debts totalling over $60,000 are owed to a large number of creditors, who are primarily suppliers of inventory. The secured debts total only $2,000. Some of the debts owed to suppliers have been unpaid since 1979. The principals of the K. C. Marsh Co., Inc., in their testimony, allege that they have lost only $8,000 to $12,000 in the first two years of operation. From this fact alone the court must conclude that either the debtor is ignoring the long overdue debt or has no concept of bookkeeping practices. When the petition was filed the only significant asset that the debtor had was an inventory that the debtor valued at $90,000 since the filing of the petition no inventory has been purchased to replace the stock that is currently being sold in the operation of the gift shop. Inventory which might otherwise be available to the unsecured creditors is being sold off at the rate of $900 per week, according to the records of the Chapter 11 trustee. But, the income generated from these sales is insufficient to repay debts, order new stock, and in June, even to pay utility bills.

The Chapter 11 trustee hired an accountant to conduct an investigation of the debtor's financial affairs. The accountant found that the debtor was not keeping account books, that proceeds from sales were sporadically deposited into the debtor's checking account, and that no tax reports had been filed by the debtor before the filing of the petition. The accountant conducted an inventory, and has tried to establish a regular accounting method to get a picture of the debtor's business. In the process of establishing some kind of order to the debtor's records, both the accountant and the trustee have found the principals of the debtor either "too busy" or too recalcitrant to cooperate.

Several times in court, the debtor has protested that the accountant's inventory and accounts are in error, because the ex-

tensive trade in old gold and antique jewelry is not included in the records. But, when pressed by this court, the debtor could not present any concrete numbers as to how much gold in weight or market value or how many pieces of antique jewelry have been involved.

At no time since the filing of the petition, has the debtor shown any activity to bring forth a reorganization plan. The principals have not conducted any negotiations to sell the business as an on-going entity, nor do they appear to be actively seeking new funding. The only testimony before the court of activity to secure new financing came not from the principals, but from minority stockholders. These parties were not able to find a new source of funding. The debtor in its "answers to the trustee's finding of facts," filed in court, June 15, 1980, mentioned that they are awaiting a plan from the court and will abide by it. The debtor has not made any effort to reorganize, refinance, or sell its business. When the trustee has made any suggestions concerning the operation of the shop or of selling the business, he has not received any cooperation from the debtor. After extensive and continuing investigation, the trustee has concluded that the interests of the creditors would be best protected by a liquidation proceeding under Chapter 7. 11 U.S.C. § 701 et seq.

## DISCUSSION

■ The debtor in the case before the bar has misunderstood what a Chapter 11 reorganization means. The debtor requesting relief has a duty to formulate a reorganization plan. 11 U.S.C. § 1121. This is the job of a debtor in reorganization. He must demonstrate that there is a reasonable possibility of a successful reorganization. *In re Bermec Corp.*, 445 F.2d 367 (2nd Cir. 1971). The plan for reorganization must be more than a nebulous speculative venture. It must have a realistic chance of success which would lead to rehabilitation, and if outside financing is needed, it must be clearly in sight. See *In the Matter of State Financial Services, Inc.*, 432 F.Supp. 129 (M.D.La.1977) aff'd. 565 F.2d 161 (5th Cir.).

■ The debtor in the case at bar has failed to formally propose a plan of reorganization, nor have there been any oral representations of such. Verbal reassurances of profitability do not constitute a plan; looking to the court to supply the answers is unreasonable; and failure to cooperate with the trustee and his accountant does not suggest a plan will be forthcoming. The debtor in this case has had more than six months to present some plan.[1] Failure to propose a plan under § 1121 can be sufficient reason to convert the case to a liquidation case under 11 U.S.C. § 1112(b)(4). The debtor has been aware of the motion to convert the case since April, and still has not proposed a plan.

A trustee, appointed pursuant to 11 U.S.C. § 1106, has a duty to investigate the debtor's estate as soon as practical. The statute specifically requires that the trustee look for facts concerning fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of affairs of the debtor. 11 U.S.C. § 1106 (a)(4)(A). The trustee found a small jewelry-gift shop that had no regular business records, and that had not filed tax statements. He hired an accountant to organize the Debtor's financial records and to prepare the reports required by the U.S. Trustee's office. After investigation, the trustee has recommended conversion of the case.

■ The trustee and the creditors are entitled to rely on specific financial data rather than the self-serving memory of the principles of a small corporation. The production of records is a reasonable quid pro quo for the debtor's relief from substantial financial obligations. See *In re Bernard A. Devine*, B.Ct.D.Mass., 11 Bkrtcy. 487 Lavien, J. (June 5, 1981). The debtor's failure to maintain books and records can be

1. 5 Collier on Bankruptcy, ¶ 1121.04 (15th ed. 1980) suggests that six months is a more than adequate time for the debtor to conduct negotiations and obtain acceptances of its plan by the requisite majority of the creditors and equity security holders affected by such plan.

grounds to dismiss or convert a Chapter 11 case to a Chapter 7 case. *In re Lamar Estates, Inc.*, 6 B.R. 933 (Bkrtcy.E.D.N.Y. 1980). The debtor is not expected to keep perfect books, but the court expects an adequate set of records sufficient to reflect business transactions.

One of the basic policies of Chapter 11 is to provide the cover of the umbrella of the reorganization court, to allow the debtor time to plan and reorganize its business practices, to rehabilitate a "sick business". But, when a debtor fails to attempt to form a plan, keeps no reliable records, and does not actively cooperate with the trustee to try for a reorganization plan while inventory losses steadily mount, meeting the standards of 11 U.S.C. § 1112(b)(1), the court finds that the trustee's motion to convert the Chapter 11 case to a Chapter 7 liquidation is reasonable and appropriate. The K. C. Marsh Co., Inc. has not demonstrated to this court that there is a reasonable likelihood of a successful reorganization. *In re Steak Loft of Oakdale, Inc.*, 10 B.R. 182 (Bkrtcy.D.Me.1980).

Any further action under Chapter 11 would only increase the burden placed on creditors who have already been waiting years for payment. Further delay would only lead to a further erosion of the estate from which the creditors can be paid.

At Worcester, this 1st day of July, 1981, according to the foregoing memorandum, it is ORDERED:

1. That the proceedings of the debtor K. C. Marsh Co., Inc. for reorganization under Chapter 11, United States Code are hereby converted to Chapter 7.