In re Philip Joseph BROWN, a/k/a Philip J. Brown, Debtor/Appellant.

In re William John BROWN a/k/a William J. Brown, Debtor/Appellant.

Civ. A. Nos. 82-3689, 82-3690.

United States District Court, District of Columbia.

April 19, 1983.

Brian R. Seeber, Washington, D.C., for debtors/appellants.

Stanley M. Salus, Docter, Docter & Salus, Washington, D.C., Stanley J. Samorajczyk, Hazel, Beckhorn & Hanes, Fairfax, Va., Stephen M. Truitt, Wald, Harkrader & Ross, Washington, D.C., for appellees.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on appeal from the orders of the Bankruptcy Judge of July 22, 1982 appointing a trustee for the individual debtors William Brown and Philip Brown, and of September 29, 1982 denying debtors' motion for reconsideration of that order. Appellants contend that the Bankruptcy Judge erred in his appointment of a trustee insofar as the evidence of mismanagement before that court related only to actions of the corporate debtor, and not to appellants as individuals. For the reasons stated below, the orders of the Bankruptcy Judge below shall be affirmed.

*Background*

This case arises out of the alleged mismanagement by the debtors of their largest asset, a parking garage located at 1250 24th Street, N.W., and their chronic failure to develop the property for more lucractive uses. Appellants/debtors William and Philip Brown own, respectively, 12.5 percent and 31.25 percent of the property. Each

also owns, respectively, 25 percent and 62.4 percent of a corporation known as B & W Management, Inc. ("B & W"), and B & W in turn owns another 12.5 percent of the property. The value of the property has been estimated by the Examiner appointed by the Bankruptcy Judge to be between $3.5 and $7 million.

The debtors have for several years attempted without success to develop the property. One potential developer procured for debtors a loan of $459,000 for appellee Vinco, Inc. secured by the debtors' interest in the property. The proceeds of the loan were to be used to settle a legal proceeding and to pay overdue taxes on the property. In July 1981, when negotiations for development of the property fell through, the debtors were unable to repay their loan upon Vinco's demand and Vinco scheduled a foreclosure on the property for December 23, 1981. The foreclosure was stayed by the filing of bankruptcy petitions by the debtors the day before. The amount of Vinco's lien was estimated in June 1982 by the Examiner to be $459,000 in principal and $281,000 in interest.

BNA Washington, Inc. ("BNAW") is an unsecured creditor of the debtors. BNAW's interest in the property stems from a purported letter agreement of March 1981 for BNAW to purchase the Floor Area Ratio ("FAR") development rights attaching to the alleyways abutting the Brown's property. BNAW paid debtors a $71,250 deposit on a total purchase price of $712,500. The parties have disputed the enforceability of the March 1981 agreement.

After the filing of the bankruptcy petitions in December 1981 by the two Browns and by B & W, the debtors remained in possession of the property and continued to operate the parking garage. In March 1982 the Bankruptcy Court appointed an Examiner to investigate the debtors' financial condition and to study the advisability of appointing a trustee. On June 9, 1982 the Examiner filed a lengthy report with the Bankruptcy Court detailing the mismanagement and ineptitude of the debtors and suggesting that the court appoint a trustee

to operate the garage and to pursue negotiations for development of the property. After a hearing on July 19, 1982 on the motions of the creditors and the United States Trustee for the appointment of a trustee, at which the court took testimony from both the Examiner and Philip Brown, the court entered an order on July 22, 1982 directing appointment of a trustee for the corporate debtor B & W as well as the two Browns, the individual debtors. On September 29, 1982, after another hearing, the Bankruptcy Judge denied debtors' motion for reconsideration of its July 22 order.

*Discussion*

The issue in this case is whether the Bankruptcy Court erred in appointing a trustee for the individual debtors and removing them from possession of their property. Appellants claim that the only evidence of mismanagement brought before the Bankruptcy Judge through the Examiner's report and at the hearing of July 19th related to alleged mismanagement of B & W, and not of appellants. It was error, appellants contend, for the court to impute to them the misdeeds of B & W.

Appellants' arguments are without merit. Section 1104(a) of the Bankruptcy Code provides that the court shall order the appointment of a trustee:

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of a case . . .; or (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.

■ Although those seeking the appointment of a trustee bear a heavy burden to overcome the presumption that a debtor should remain in possession of his property, the decision of the Bankruptcy Court to appoint a trustee must be upheld unless clearly erroneous. *In re Garland Corp.,* 6 B.R. 456, 460 (B.R.App., Mass.1980); Bankruptcy Rule of Procedure 810.

■ Appellants correctly state that the powers of the bankruptcy court under Sec-

tion 1104(a)(1) are limited to a determination of whether "cause" exists for the appointment of a trustee, such cause being in the nature of "fraud, dishonesty, incompetence or gross mismanagement." *In re Anchorage Boat Sales, Inc.,* 4 B.R. 635 (Bkrtcy. E.D.N.Y.1980). But Section 1104(a)(2) embodies a more flexible standard under which the court may engage in a cost benefit analysis to determine whether the appointment of a trustee would be in the interests of creditors, other equity holders, and other interests of the estate. *Id.*

In any event, the record provides ample support for the decision of the Bankruptcy Judge under either subsection of § 1104(a). Admittedly, much of the Examiner's report dealt with mismanagement by the corporate debtor, B & W, of the parking garage, including lack of adequate accounting controls of this cash business; repeated failure timely to pay real estate taxes, resulting in additional penalties; failure to obtain proper insurance for both employees and the property; failure to withhold taxes from employees' wages. And the affairs of the corporation are so closely intertwined with those of the individuals that the Bankruptcy Judge was not clearly erroneous in inferring from corporate misdeeds evidence of the individuals' incapacity to manage their affairs. An example of that intertwining was the apparent misuse of many thousands of dollars of corporate funds to finance the Browns' individual litigation.

Furthermore, the record is replete with evidence of the ineptitude of the individual debtors in pursuing negotiations for development of the property, such as "imposing numerous unwarranted restrictions on its development," Examiner's Report at 24, including barring from participation in its development many major Washington developers. *Id.* at 9–10. Brown further refused to sell the property, insisting instead on a long-term lease, requiring that he be allowed to operate the garage in any building which might be constructed on the property, and preserving the facade of the existing parking garage as a monument to the Brown family. *Id.* at 9–11. Each additional restriction, the Examiner concluded,

"(1) lessens the number of prospective acquirers/developers/users of the property, (2) complicates the transaction, and (3) slows the closing of a transaction." *Id.* at 9. As the Examiner noted, development of the property is the only viable means of rehabilitating the debtors. Consequently, each such unwarranted obstacle to development threatens the interests of the creditors and, in fact, those of the debtors themselves, as well as the other equity owners of the property.

Moreover, the Examiner noted Philip Brown's growing reputation as "a litigious person who is extremely difficult to deal with", *id.,* a reputation which had frightened away at least one prospective developer who was "nervous about closing on the property as increasingly it [was] uncomfortable negotiating with Philip Brown." *Id.* at 11. Philip Brown's acrimonious relations extended, as well, to the other equity owners of the property whose consent would be necessary for its long-term development. The Examiner noted that Philip Brown's "very hostile relationship" with the legal guardian of Loretto Brown, a 37.5 percent owner, was "a stumbling block" in efforts to develop the property. *Id.* at 18. Riggs National Bank, co-trustee of the trust with a 6.25 percent interest in the property, "has had a long and difficult relationship with Philip Brown." *Id.* at 15.

Although appellants properly state that most of the evidence of mismanagement concerns only Philip Brown, William Brown has as a practical matter delegated control of his share in the property to Philip—hardly a prudent decision in itself, in view of Philip's past record of failure. The close interrelationship between Philip and William Brown makes it unworkable to accept appellants' suggestion of a segregation of their interests.

Finally, appointment of a joint trustee for all three debtors is justified in order to allow the trustee to get the job done. The powers of the trustee to negotiate effectively would be vitiated if he were empowered to act only on behalf of the corporate

debtor holding only 12.5 percent of the property. Noting the "close interrelationship of the parties as developed in the Examiner's report itself", Transcript at 19, the Bankruptcy Judge properly refused to reconsider his decision to appoint a joint trustee for all three debtors.

In sum, substantial evidence existed to support the decision of the Bankruptcy Judge. Accordingly, the orders appealed from shall be affirmed.