**In the Matter of DENROSE DIAMOND, Debtor.**

**Bankruptcy No. 84 B 11122.**

United States Bankruptcy Court, S.D. New York.

May 2, 1985.

Hahn & Hessen, New York City, for Irving Trust Co.; George A. Hahn and Angela Tese, New York City, of counsel.

Marvin Neiman, New York City, for debtor; Philip E. Weinberger, New York City, of counsel.

Lawrence Ginsburg, New York City, for European-American Bank.

John Campo, New York City, Deputy Asst. U.S. Trustee.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Unsecured creditors, Irving Trust Company ("Irving") and European American Bank & Trust Company ("EAB") ("Movants") seek an order pursuant to the Bankruptcy Code, 11 U.S.C. § 1112(b) (1978) (the "Code) converting this case to Chapter 7 and granting any other relief as is just and reasonable under the circumstances or, in the alternative, appointing a Trustee pursuant to Code § 1104 to manage Debtor's business and investigate its financial affairs. (Tr. 4/3/85, p. 2). The United States Trustee for the Southern District of New York joined in the application.

Denrose Diamond Co. Inc. ("Debtor"), manufacturer of and trader in diamonds, filed a petition under Chapter 11 of the Bankruptcy Code (the "Code") on August 9,

1984. The petition alleges that Debtor's filing was spurred by "the substantial drop in the value of diamonds" which in turn caused a "drastic decline in the market value of the debtor's inventory." The Debtor continued in business as debtor-in-possession. In responding to the motion, Debtor moved to amend its petition so to add "The Word Factory" to the creditor list and to change the Movants' creditor status from unsecured to disputed. Movants object to any change in their status as unwarranted and to the amendment as irrelevant to their motion.

I

■ Section 1112(b) of the Code enables the court "on request of a party in interest," and "after notice and a hearing" to convert a Chapter 11 case to Chapter 7 or dismiss it, whichever is in the best interest of creditors and the estate, "for cause", including:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan; and,

(3) unreasonable delay by the debtor that is prejudicial to creditors....

Here it is alleged that cause is largely to be found in continuing operating losses, an unexplained shrinkage in the inventory's value, failure to file mandated monthly operating statements, and Debtor's officers' bad faith in their dealings with the Creditors. In this, Movants bear the burden of proof. *In re Union Wholesale Tobacco*, 8 B.R. 439 (Bankr.D.N.J.1981).

A. *Continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation*

■ Section 1112(b)(1) codifies a two-prong test of continued deterioration and lack of a reasonable likelihood of rehabilitation. Once met, the bankruptcy judge has discretion over the decision to convert. *In re International Airport Inn Partnership*, 517 F.2d 510 (9th Cir.1975). However, [a]t the early stages of a Chapter 11 case, the Court should give the debtor the benefit of the doubt where the evidence is in equipoise or indicates that the pre-bankruptcy losses will not cease over a reasonable period of time. *In the Matter of Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr.S.D.N.Y.1984).

i. *Continuing Losses*

■ Thus, short term operating losses where there exists a realistic possibility of rehabilitation do not warrant conversion. *In re Garland Corp.*, 6 B.R. 456 (Bankr.D. Mass.1980). But, a positive cash flow will not guard against conversion when it masks a static enterprise whose financial statements do not account for costs necessary to doing business. *In re Tolco Properties, Inc.*, 6 B.R. 482 (Bankr.E.D.Va.1980). Full collateralization of assets coupled with a negative cash flow and an inability to pay current expenses has, however, prompted conversion. *In the Matter of 3868–70 White Plains Road, Inc.*, 28 B.R. 515 (Bankr.S.D.N.Y.1983).

■ Here, inasmuch as can be ascertained from the skimpy information contained in the Debtor's post petition operating statements, the Debtor has suffered a relatively small net loss of $21,366 over the four month period subsequent to the filing of the petition in August 1984. Operating statements have not been filed for January, February or March 1985. Though Debtor alleged a slight operating profit for the month of January, Movants dispute its existence. (Tr. 4/3/85, p. 14).

As such, this case differs from *Pied Piper* where continuing significant losses of nearly $200,000 for the first two months post petition and a failure to come even close to realizing sales projections warranted conversion.

The sparse information gleaned from Debtor's financials is seemingly more optimistic. In September, Debtor claims to have had $99,490 gross profit on sales of $397,948 with a net loss of $7,003. In October, an alleged gross profit fell slightly to $74,910 on sales of $299,633, but Debtor claims to have almost broken even with a slight loss of $181. The Debtor's

November financial statements claim a gross profit of $39,330 on sales of $157,322 and a net loss of $13,206. In December, however, it is asserted that the Debtor garnered a $75,216 gross profit on sales of $300,858 and a net loss of only $976. Movants have introduced no evidence contradicting these assertions and consequently have not carried their burden on this issue.

### ii. *Diminution of the Estate*

■ Diminution of the estate sufficient to motivate conversion has been found where a secured creditor's collateral was rapidly depreciating, no unencumbered assets remained and no prospects existed to produce income. *In re Kors*, 13 B.R. 676 (Bankr.D.Ver.1981); *In re Pappas*, 17 B.R. 662 (Bankr.D.Mass.1982). Here, it is undisputed that Debtor's balance sheet shows an 80% drop in inventory value during the year prior to filing the petition. But the Debtor asserts that the 80% decrease reflects a drop in the market value of diamonds. Furthermore, its financial statements, such as they are, indicate that the diminution has not continued as § 1112(b)(1) requires. Movant's introduced no evidence to the contrary and it appears that the assets are sufficient to produce income.

### iii. *Lack of a Reasonable Prospect of Rehabilitation*

■ While the rehabilitation concept of § 1112(b)(1) contemplates a return to financial good health, *In the Matter of Pied Piper Casuals, Inc.*, 40 B.R. 723, 726 (Bankr.S.D.N.Y.1984), the cases ordering conversion have done so where losses were definite with reorganization nothing more than "a nebulous speculative venture". *In re Tracey Service Co., Inc.*, 17 B.R. 405, 410, 8 B.C.D. 948, 950 (Bankr.E.D.Pa.1982). The cessation of business, as evidenced by an absence of inventory, employees, equipment and/or income, makes unlikely the ability to rehabilitate. *Ibid.; In re CCN Realty Corp.*, 23 B.R. 261 (Bankr.S.D.N.Y. 1982). Conversion has also occurred under § 1112(b)(1) when persons knowledgeable of Debtor's finances reported both the need to infuse large amounts of money into the Debtor and the absence of any realistic prospect of obtaining such financing.

Absent similar circumstances such as in *Pied Piper* where the cyclical nature of the debtor's business effectively precluded rehabilitation,

> the probability that a liquidating plan may be filed does not serve as a ground for [conversion or] dismissal because the submission of such a plan is proper under Chapter 11.

*In re L.N. Scott Co., Inc.*, 13 B.R. 387 (Bankr.E.D.Penn.1981); 5 *L. King & Collier on Bankruptcy* ¶ 1112.03[ii] (15th Ed.) (1985); *See* § 1112(a)(5)(D) & (b)(4). Further, some courts have ruled that when reorganization no longer remains a viable option, conversion should not be ordered when liquidation would proceed more expeditiously and less expensively under control of the debtor. *In the Matter of W.J. Rewoldt Co. Inc.*, 22 B.R. 459, 462 (Bankr.E.D.MI.1982).

These standards have not been met here. It has not been shown that the Debtor will not likely be rehabilitated. Moreover, the Debtor's alleged ability to sell its inventory for more than double what could be realized in liquidation is unrebutted.

### B. *Unreasonable Delay and Failure to File a Plan*

■ Movants also assert that seven months have passed without the filing of a plan; conversions have occurred within that time frame. Yet cases ordering such were largely single asset cases presenting factors in addition to the passage of time. In *In re CCN Realty Corp.*, 23 B.R. 261 (Bankr.S.D.N.Y.1982), for example, the debtor failed to collect rent for its one asset and did not produce any books or records. In *In the Matter of 3868–70 White Plains Road, Inc.*, 28 B.R. 515 (Bankr.S.D.N.Y., 1983), the only asset was fully mortgaged. Upon liquidation of the estate, all proceeds would have inured to the sole benefit of the first mortgagee and any plan would have to based on new capital which did not appear forthcoming. Sim-

ilarly, in *In re Kors, Inc.*, 13 B.R. 676 (Bankr.D.Vt.1981), the debtor filed a plan on the last day of his 120 day exclusivity period and did not submit a proper disclosure statement, only a worksheet listing unreliable numbers. The delay was found "unreasonable" and "prejudicial" to creditors.

Here, discussions between the Debtor and Movants broke down; the hostility between the parties being very apparent from the allegations bandied back and forth at the two hearings. It does not appear, however, that Debtor was unilaterally responsible for having retarded the consensual process, or that the delay was unreasonable and prejudicial. The movants did not sustain their burden under § 1112(b)(2).

### C. Cause

■ A debtor's lack of good faith does constitute cause for conversion to Chapter 7. *In re Kors, Inc.*, 13 B.R. 676, 680 (Bankr.D.Ver.1981); *In re G–2 Realty Trust*, 6 B.R. 549, 552 (Bankr.D.Mass. 1980). Such bad faith has been found, *inter alia*, where

> the debtor either kept no records from which its true financial condition might be ascertained or has concealed such records and even during the course of [a] lengthy Chapter 11 proceeding has not produced information that even marginally complies with the reporting requirements of the United States Trustee.

*In re Pappas*, 17 B.R. 662, 668 (Bankr.D. Mass.1982). *See also, In re Larmar Estates, Inc.*, 6 B.R. 933, 6 B.C.D. 1300 (Bankr.E.D.N.Y.1980).

Pursuant to his statutory duty to supervise Chapter 11 cases, 28 U.S.C. § 586(a)(3) (1985), the United States Trustee for this district promulgated thorough operational guidelines prescribing the filing of verified monthly operating statements.[1] Those statements are to contain an accrual basis profit and loss statement and balance sheet prepared according to generally accepted accounting principles and the minimum disclosure requirements set forth in AICPA Accounting Principles Board Opinion # 28. Five additional schedules must be included: cash receipts and disbursements listing each transaction by ledger account when the debtor conducted less than 50 transactions; accounts payable classified according to their due date; accounts receivable classified according to due date; federal, state and local taxes collected, received, due or withheld; and cost of goods sold classified by manufacturing process or product line. Where the statements are prepared by someone other than the debtor, an opinion letter specifying the audit or review standards employed must be annexed.

Here, the Debtor's monthly statement of operations that were submitted fail to comply even minimally with the guidelines. The September 1984 income statement and a cash receipts and disbursements statement fail to contain the following essentials: an accounts receivable statement; a federal, state and local taxes schedule; an accounts payable statement; a cost of goods sold schedule; and a balance sheet. The statements for October and November are similarly sparse. In December, the two statements submitted in the previous months are supplemented by a cover sheet, a balance sheet, and a copy of the ledger entries reflecting some accounts payable information. That information, however, is not compiled, nor is it classified according to the 30 days due date intervals required by the guidelines. And if this were not enough, not even a pretense of compliance is claimed for January, February and March, 1985, for no statements were filed for those months.

This unwillingness to comply with the disclosure required of all Chapter 11 debtors demands rectification. Whether it requires conversion and the resultant termination of a debtor's business, however, is not at all clear. Appointment of a trustee upon conversion would afford the investi-

---

1. Local Bankruptcy Rule XI–3, though not as comprehensive as the United States Trustee's Operating Guidelines, also requires the filing of verified monthly statements.

gation that a failure to make disclosure compels.

Though Debtor's post-petition financials fail to satisfy the U.S.T.'s guidelines, no authority for converting a case on the basis of unsatisfactory financial records alone has been called to our attention. In the cases where the court conversion was ordered in the absence of monthly statements, other grounds for conversion existed. *E.g., In re Larmar Estates,* 6 B.R. 933 (E.D.N.Y.1980). They are lacking here. Accordingly, we turn to consideration of the Movants' request for a trustee under § 1104 in order to afford such an investigation and to secure compliance.

## II

Code Section § 1104(a) allows the court to order the appointment of a trustee

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor's by current management, either before or after the commencement of the case, or similar cause, . . . ; or

(2) if such appointment is in the interests of the creditors, . . .

Such an appointment is an "extraordinary remedy," a trustee's fees are an additional, perhaps needless, expense and it is generally presumed that the debtor "knows his own business" and will continue as management, taking advantage of his acquired experience. *In re Bonded Mailings, Inc.,* 20 B.R. 781 (E.D.N.Y.1982). Yet in instances of incompetence or where the appointment of a trustee would be in the interest of creditors, equity holders, and other interests of the estate, the court should make the necessary appointment. *In re Brown,* 31 B.R. 583 (D.C.1983); *In re Eichorn,* 5 B.R. 755 (Bankr.D.Mass.1980).

Here, the Debtor's failure to comply with the guidelines has had the immediate consequence of keeping its creditors in the dark as to its financial performance while at the same time raising several disturbing issues of concern to its creditors and anyone who would attempt to understand its prospects.

For example, the Debtor had certain deposits at Manufacturer's Hanover exceeding $300,000 at the time of filing its petition. That sum was reduced by approximately $165,000. Similarly, accounts and notes receivable exceeding $1,200,000 at the time of filing were reduced by more than $600,000. (Tr. 4/3/84, p. 4). The financial statements should have accounted for these decreases. Also should be explained is the concurrent decrease in cash, accounts receivable and inventory reflected by the December 1984 balance sheet. (Tr. 4/3/85, p. 34).

Thus, this is a case where the financial statements that have been filed raise significant questions and the Debtor failed to file any further financial statements. Such conduct demands the appointment of a trustee to cure the debtor's incompetance, as provided by § 1104(a) and in the best interest of creditors as provided by § 1104(b).

Reorganization is a consensual process propelled by a free flow of information. "The trustee and the creditors are entitled to rely on specific financial data rather than the self-serving memory of the principals of a small corporation." *In the Matter of K.C. Marsh, Co. Inc.,* 12 B.R. 401, 7 B.C.D. 1053, 1054 (Bankr.D.Mass.1981). Complete monthly operating statements have long been required and are necessary to that process. A debtor in possession stands in the shoes of a trustee. A

trustee stands in a fiduciary relationship to all the creditors and has the inherent duty to keep them informed.

*In re Miller,* 485 F.2d 74 (5th Cir.1973) *cert. denied sub nom. Landwehr v. United States,* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974).

A dearth of such information negates that process. Where there is no offer of proof as to a compelling excuse for the failure to comply, creditors should be protected through the appointment of à Chapter 11 trustee to investigate and operate the business. *In re Steakloft of Oakdale,* 10 B.R. 182, 185 (E.D.N.Y.1981). Accord-

ingly the United States Trustee is directed to appoint an operating trustee pursuant to § 1104 of the Code.[2]

IT IS SO ORDERED.

---

**2.** Given this direction, we do not reach the Debtor's motion to amend. The Trustee should consider and report on whether the amendments are supported by the Debtor's book and records and relevant facts.