In re L. S. GOOD & CO. et al., Debtors.

In re SMITH, BRIDGMAN & COMPANY.

Bankruptcy Nos. 80–00253–W through 80–00261–W and 80–00389–W.

United States Bankruptcy Court, N. D. West Virginia.

Oct. 30, 1980.

Howard L. Sokolsky, Nadler, Sokolsky, Bahas & Balantzow Co., L.P.A., Cleveland, Ohio, for debtor in No. 80–00258–W.

John W. Wolfe, Saginaw, Mich., and James F. Companion, Schrader, Stamp & Recht, Wheeling, W. Va., for William E. Upham, et al. in No. 80–00258–W.

Howard L. Sokolsky, Cleveland, Ohio, for debtor in Nos. 80–00256–W, 80–00255–W and 80 00253–W.

John J. Dilenschneider and Gordon Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Creditors' Committee in No. 80–00256–W.

Gordon Johnston, Columbus Ohio, for Creditors' Committee in Nos. 80–00255–W, 80 00253 W.

Charles J. Kaiser, Jr., Phillips, Gardill, Hazlett & Kaiser, Wheeling, W. Va., for Wheeling Dollar Savings & Trust Co. in No. 80 00253 W.

## MEMORANDUM OPINION

JOHN H. KAMLOWSKY, Bankruptcy Judge.

Smith, Bridgman & Company, a corporation, (hereinafter called Smith) filed a voluntary Chapter 11 petition in this District May 27, 1980. As of May 27, 1980, Smith operated four (4) retail department stores located in downtown Flint, Michigan, suburban Flint, Michigan, Davison, Michigan and Grand Blanc, Michigan. Smith is a subsidiary corporation of J. W. Knapp Company, a corporation, which also filed a voluntary Chapter 11 petition in this District May 27, 1980. J. W. Knapp Company is a subsidiary corporation of L. S. Good & Co., a corporation, which also filed a voluntary

Chapter 11 petition in this District May 27, 1980.

On September 17, 1980 the unsecured Creditors' Committee of Smith filed a motion to convert Smith from a Chapter 11 proceeding to a case under Chapter 7 under the provisions of 11 U.S.C. § 1112. Hearing was had on the motion October 16, 1980 at Wheeling. Now having fully considered the testimony and arguments of counsel, I find the facts to be as follows:

1. Smith has incurred losses in the months indicated as follows:

| | |
|---|---|
| May, 1980 | ($40,236.00) |
| June, 1980 | ($28,555.00) |
| July, 1980 | ($86,786.00) |
| August, 1980 | ($98,571.00) |

2. As of May 26, 1980 the cost value of the Smith inventory was $572,431.00. As of October 3, 1980 the cost value of the inventory was $271,900.00.

3. Smith's retail sales for the months of May, June, July and August, 1980 totaled $445,967.00. For the same period in 1979, sales totaled $1,360,770.00.

4. As of October 14, 1980 Smith had cash on hand totaling $73,000.00.

5. The testimony of a Financial Vice President of the parent corporation, L. S. Good & Co., and the testimony of a Certified Public Accountant is that present inventory levels are such that it would require an $800,000.00 expenditure for new inventory in order for Smith to have adequate inventory to operate at a profit.

6. The Financial Vice President of the parent corporation further testified that he has no knowledge of any source from which fresh capital may be borrowed and fresh capital is essential for the rehabilitation of Smith.

7. By order entered October 16, 1980 this Court ordered Smith to cease operating their retail department stores.

11 U.S.C. § 1112 states, inter alia, that a party in interest, after notice and a hearing, may move to convert a case under Chapter 11 to a case under Chapter 7 of Title 11, if in the best interest of the creditors and the estate, for cause, including continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.

The evidence adduced at the hearing on the motion is uncontroverted that Smith was suffering substantial weekly operating losses prior to its closing, the inventory was being rapidly depleted and Smith has no sources from which to borrow needed capital for new inventory. The further uncontradicted testimony is that an infusion of fresh capital in a sum approximating $800,-000.00 is required to purchase new inventory if the stores are to resume business. Without the infusion of fresh capital, there is no question that Smith cannot profitably operate and Smith is unable to acquire the fresh capital necessary for rehabilitation.

■ Counsel for Smith urges that the Court not convert the case to a Chapter 7 case for the reason that a conversion would abort any reorganization effort. However, without necessary financing from third parties, the debtor and the creditors have no option except liquidation and liquidation is generally not the proper function of reorganization proceedings, *In re Pure Penn Petroleum Co., Inc.*, 188 F.2d 851 (2d Cir. 1951), but the function of Chapter 7 proceedings. Debtors should not continue in control of their businesses under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor. There is nothing in the record of these proceedings to suggest that the debtor-in-possession is either better able or more motivated to proceed promptly with an efficient liquidation than is an experienced fiduciary whose commitment is to the promotion of parity among interested parties rather than to self-interest. There is every reason to believe that the substantial cost savings realized by minimizing the fees and expenses of debtor's counsel and the creditors' committee counsel should more than offset the fees and expenses of a trustee. *Matter of Maplewood Poultry Co.*, 2 B.R. 545 (1980) (Bkrtcy.U.S.B.C.D.Me.)

I must conclude that Smith was suffering substantial weekly operating losses with a resulting diminution of the estate to the detriment of the creditors and there is no prospect of a reasonable likelihood of rehabilitation for the necessary fresh capital is unavailable. I am, therefore, of the opinion and do find that the motion of the unsecured Creditors' Committee should be granted and this case be converted from a Chapter 11 case to a Chapter 7 case. It is accordingly,

SO ORDERED.