In re LARMAR ESTATES, INC., Debtor.

In re MEDAF HOLDING CORP., Debtor.

Bankruptcy Nos. 880 01917, 880 01918.

United States Bankruptcy Court,
E. D. New York,
at Westbury.

Nov. 17, 1980.

See, also, Bkrtcy., 5 B.R. 328.

Pliskin, Rubano & Baum, Flushing, N. Y., for debtors by Charles F. Rubano, Flushing, N. Y.

Ira L. Hyams, P. C., Jericho, N. Y., for FDIC by Howard J. Herman, Jericho, N. Y., of counsel.

I.

ROBERT JOHN HALL, Bankruptcy Judge.

Larmar Estates, Inc. and Medaf Holding Corp., (the "debtors") have moved this Court for orders pursuant to 11 U.S.C. section 1121(d),[1] extending the debtors' exclu-

---

1. 11 U.S.C. section 1121 provides that:
   (a) The debtor may file a plan with a petition commencing a voluntary case or an involuntary case. (b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for

sive time to file Chapter 11 plans. The Federal Deposit Insurance Corporation (the "FDIC"), a major creditor of the debtors, has opposed the debtors' motions and has moved this Court for orders dismissing the debtors' Chapter 11 cases. For the reasons set forth below, the Court denies the debtors' motions, and grants the FDIC's motions to the extent that it will convert the debtors' Chapter 11 cases to cases under Chapter 7.

## II.

On April 18, 1980, the debtors filed petitions for reorganization under Chapter 11 of the Bankruptcy Code. The president of each of the debtors is Irving Rubin ("Rubin"). Each of the debtors possesses only a single asset. Larmar holds a second mortgage on an apartment house located in Lawrence, New York. The debtor, in its petition, valued the mortgage at $1,300,000.00. Medaf's only asset is a $500,000.00 debt owed to it by Caprimar Estates ("Caprimar"). Caprimar appears to be a shell corporation formed by Rubin. Caprimar's precise relationship to Medaf and Larmar is unclear.

The debtors' Chapter 11 cases have been pending in this Court for seven months. There is no evidence that these debtors are any closer now to promulgating plans than they were when they filed their petitions. Indeed, in paragraph 4 of the debtors' affirmations in support of their motions, the debtors' counsel stated that: "[I]t is impossible at this time, or even within the next four months, to determine what the debtors' actual position is and should be with regard to its responsibility to its creditors." The FDIC urges this Court to dismiss the debtors' cases so that it may pursue its State court remedies against the debtors.

## III.

11 U.S.C. section 1112(b) empowers the bankruptcy court to convert a Chapter 11 case to a case under Chapter 7, or in the alternative to dismiss the Chapter 11 case. Section 1112(b) provides that:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of additional time for filing another plan or a modification of a plan;

(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; and

relief under this chapter. (c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
(1) a trustee has been appointed under this chapter;
(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class the claims or interests of which are impaired under the plan.
(d) On request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180 day period referred to in this section.

(9) termination of a plan by reason of the occurrence of a condition specified in the plan.

*Id.* The Court's determination under section 1112(b) can be made only: "on request of a party in interest"; "after notice and hearing"; and "for cause". *See* 5 *Collier on Bankruptcy* ¶ 1112.03[2], p. 1112–10 (15th ed. 1979); Trost, *Business Reorganizations Under Chapter 11 of the New Bankruptcy Code,* 34 Bus.Law. 1309, 1316 n.65 (1979). The motions made by the FDIC, which, except for Rubin, is the single largest creditor of each of the debtors; and the hearing held on the motion, satisfy the first two requirements of section 1112(b). Thus, it remains for the Court to determine whether cause has been shown for dismissing the debtors' Chapter 11 cases or converting the debtors' Chapter 11 cases to cases under Chapter 7.

The debtors have enjoyed the protection of Chapter 11 for seven months. There has been absolutely no movement toward the confirmation of a plan in these cases. Indeed, at the hearing on the motions the debtors' counsel, with admirable candor, advised the Court that:

> Then again, these two cases are very similar. We brought on a Motion to extend the time required to file a Plan. We have not been able to file a Plan herein mainly because of our problem with the mortgage foreclosure in Larmar, and with the aspect that we have not been able to formulate a Plan in Medaf either. Both are real estate corporations with substantial problems.
>
> The major creditor, Federal Deposit Insurance Corporation, has cross-moved for dismissal. That's where we are at the moment.
>
> Certainly in Larmar we can't even propose a Plan until we know what is going to happen with the only asset, which is that million dollar mortgage which we have attempted to foreclose in the Supreme Court, Nassau County.

In illustrating the debtors' current financial and operating condition, the FDIC has referred the Court to Rubin's testimony given at the section 341(a) Meeting of Creditors held in the Medaf Chapter 11 case.

Q Do you have any records that would enable you—

A [Rubin] Nothing.

Q You have no records at all?

A Nothing.

Q You don't recall ever seeing any records of Medaf?

A No.

Q Where does Medaf maintain its place of business today?

A There is no place of business.

Q Does Medaf have any employees?

A None.

Q Does it have a payroll?

A Nothing.

Q What is Medaf doing today?

A Nothing.

Q What does Medaf intend to do in the future?

A I really don't know. I really don't know.

As president of Larmar, Rubin testified that:

Q I would like to inquire into other areas other than the mortgage. There are things involved in this proceeding besides that mortgage. Does Larmar have a place of business?

A [Rubin] No.

Q What activity is Larmar engaged in today?

A Nothing.

Q What are Larmar's plans for the future?

A Nothing. If we ever get the money we will do something.

Q The money you are talking about is the money from the mortgage on the property in Lawrence?

A Yes.

Q Does Larmar have any employees?

A No.

Q It has no payroll?

A Nothing.

It is clear that the debtors have been unable to effectuate plans of reorganization. Accordingly, the Court finds that

cause has been shown for dismissing or converting the debtors' Chapter 11 cases. *See* 11 U.S.C section 1112(b)(2). *Cf. In re Webcor, Inc.*, 392 F.2d 893 (7th Cir.) *cert. denied sub. nom. Silver, Inc. v. Webcor, Inc.*, 393 U.S. 837, 89 S.Ct. 113, 21 L.Ed.2d 107 (1968) (Debtors' failure to file plans of arrangement within three and one half months after the filing of their Chapter XI petitions constituted grounds for adjudication.)

█ Moreover, the Court finds that Medaf's failure to maintain books and records constitutes cause for dismissing or converting the Medaf Chapter 11 case.

█ In determining what constitutes cause for dismissing or converting a Chapter 11 case, the Court is not limited to those grounds enumerated in section 1112(b).[2] The Legislative history makes this abundantly clear. "The list [contained in section 1112(b)] is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." House Report No. 95–595, 95th Cong., 1st Sess. 405–06 (1977) *reprintd in* [1978] U.S.Code Cong. and Ad.News, pp. 5787, 5963, 6362; *see generally 5 Collier on Bankruptcy*, ¶ 1112.03[2] (15th ed. 1979).

While a debtor may not be expected to keep a "perfect" set of books and records, it should keep an adequate set of books and records to reflect its business transactions. This circuit has stated in a different context that:

> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances; *but it is intended that there be available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.* Records of substantial completeness and accuracy are required so that they may

be checked against the mere oral statement or explanations made by the bankrupt. See *International Shoe Co. v. Lewine*, 68 F.(2d) 517, 518 (C.C.A.5).

In the instant case, where there were many transactions of unusual sums of money paid for securities and received in sale thereof, and the bankrupt had borrowed various large amounts, an adequate set of records should have been kept by him to reflect these transactions.

*In re Underhill*, 82 F.2d 258, 259–60 (2d Cir.) *cert. denied sub. nom. Underhill v. Lent*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936) (emphasis supplied). (Bankrupt's failure to keep adequate records of business transactions involving unusual sums of money constituted grounds for barring his discharge.)

It is true that in discussing the concept of adequate information in connection with the disclosure statement required by 11 U.S.C. section 1125, the House report stated that:

> "Frequently, the debtor's books will be in shambles at the time of bankruptcy and reconstruction could be a long and costly process. *If there is no need for the information under the circumstances*, reconstruction may be dispensed with, and certified audited financial statements will be required."

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 226. (emphasis supplied). *Reprinted in* [1978] U.S.Code Cong. and Ad. News, pp. 5963, 6186.

It is clear, however, that in the present situation the debtors' books and records are necessary to evaluate Medaf's loan transaction with Caprimar. Medaf's failure to keep books and records of its $500,000 loan transaction to Caprimar, makes it impossible to ascertain Medaf's present financial condition. *See Underhill, supra,* at 260. In the absence of such books and records, it is imperative that an independent investigation be conducted. Accordingly, the Court finds that Medaf's failure to keep any books or records of its loan transaction with Ca-

**2.** 11 U.S.C. section 102(3) provides that the word "including" is not limiting. Accordingly,

the examples of cause given in section 1112(b) are merely illustrative.

primar constitutes cause for dismissing or converting Medaf's Chapter 11 case.

■ Before determining whether the Court should dismiss or convert the debtors' Chapter 11 cases, the Court must determine whether it has the power to convert a Chapter 11 case when a party in interest has only moved to dismiss a Chapter 11 case. Section 1112(b) gives "wide discretion to the court to make an appropriate disposition of the case when a party in interest requests." House Report No. 95–595, 1st Cong., 1st Sess. 405 (1977) *reprinted in* [1978] U.S.Code Cong. and Ad.News, pp. 5963, 6361; *In re Tolco Properties, Inc.*, 6 B.R. 482, 6 B.C.D. 913, 917 (B.C.E.D.Va.1980). The determining factor, is not whether a party in interest has requested conversion or dismissal, but rather whether dismissal or conversion will be in the best interest of creditors and the estate. As stated in *Collier on Bankruptcy*:

> Although a party–in–interest may request dismissal rather than conversion, the Court must make its own decision as to whether dismissal or conversion best serves the interest of the creditors.

5 *Collier on Bankruptcy*, ¶ 1112.03[iv], p. 1112–18 (15th ed. 1979); *In re Tolco Properties, Inc., supra* 6 B.R. 482, 6 B.C.D. at 915; *See also* King, *Chapter 11 of the 1978 Bankruptcy Code*, 53 Am.Bankr.L.J. 107, 119 (1979).

Thus, the ultimate decision of whether the debtors' Chapter 11 cases should be dismissed or converted rests within the sound discretion of the bankruptcy court.

■ Had the FDIC been the sole creditor of both debtors, the Court would have granted the FDIC's motion for dismissal. Except for Rubin, the FDIC is the only creditor of Medaf. However, the FDIC is not the sole creditor of Larmar. Larmar has six additional creditors who are owed an aggregate amount of approximately $153,000.00. In determining whether to dismiss or convert the debtors' Chapter 11 cases, the Court must consider what will be in the best interest of *all* creditors. *In re Tolco Properties, Inc., supra*, 6 B.R. 482, 6 B.C.D. at 917.

■ Larmar's sole asset, the mortgage on the apartment house, is valued by the debtor at $1,300,000.00. An investigation by an independent trustee would be in the interests of all creditors, as it would allow the trustee to determine whether that asset is of any significant value. An independent trustee is also necessary to investigate Medaf's loan transaction with Caprimar. In addition, a trustee would be useful in determining whether any connections exist among Larmar, Medaf and Caprimar. Accordingly, the Court finds that it is in the best interest of all creditors to convert the debtors' Chapter 11 cases to cases under Chapter 7.