**In the Matter of BURNSIDE, LEE & HARRIS DIAMOND COMPANY Debtor, and Burnside, Lee & Harris Management Company Debtor.**

**Bankruptcy Nos. 81–1537, 81–1544.**

United States Bankruptcy Court,
Florida,
Tampa Division.

Dec. 16, 1981.

Domenic Massari, Sarasota, Fla., Andra Dreyfus, Treasure Island, Fla., for debtors.

Malka Isaak, Tampa, Fla., for Harvey Harris.

## ORDER ON MOTION TO DISMISS, CONVERT AND ON MOTION TO APPOINT TRUSTEE OR EXAMINER

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE two business reorganization proceedings commenced by a Petition for Relief under Chapter 11 of the Bankruptcy Code filed by Burnside, Lee & Harris Diamond Company (Diamond Company) and Burnside, Lee & Harris Management Company (Management).

The matters under consideration are two motions filed in each case by Thomas Klaschik, who claims to be a creditor of both Debtors. One seeks the appointment of a trustee or in the alternative, the appointment of an examiner; the other seeks a dismissal or in the alternative, an order converting the case to a Chapter 7 liquidating proceeding. By agreement of the parties, the issues raised by the Motions were to be treated, pursuant to Bankruptcy Rule 914, as contested matters, making all discovery tools available to both sides.

Needless to say, the entry of this Order created an immediate and frantic flurry of activity; there was no time wasted and parties commenced discovery proceedings at once in preparation for the evidentiary hearing which, because of the alleged emergency nature of the matters presented by the Motions, was set down on short notice.

At the final evidentiary hearing, the following matters relevant to the resolution of the issues raised by the two Motions were established:

Management is a holding corporation and was, and still is, the owner of all the outstanding stock in the Diamond Company. It also held all outstanding shares in the corporation known as Burnside, Lee and Harris Associates, Inc. (Associates), a corporation not presently involved in any proceeding under the Bankruptcy Code. Messrs. Burnside, Lee and Harris, were the principals who formed Management and the Diamond Company. The Diamond Company was established to engage in the purchase and sales of precious stones, primarily diamonds, to individual investors through brokers. Mr. Harris, who was the expert in this field, was in charge of the purchase and sales, and Messrs. Burnside and Lee were acting as the marketing specialists.

On May 3, Mr. Harris left on a trip. Shortly thereafter, an inventory was taken which indicated an inventory shortage in excess of $200,000. The relationship between Mr. Harris and Messrs. Burnside and Lee became more and more strained. For this reason, the parties agreed to part company. On May 12, 1980, Management entered into a contract whereby it agreed to repurchase the stock held by Mr. Harris in the Diamond Company (Pl's Exh. # 4). With the departure of Mr. Harris, the Diamond Company's business came to a virtual standstill, although it is claimed by Messrs. Burnside and Lee that they are exploring new avenues to market diamonds, basically acting only as a broker (Pl's Exh. # 2), which is understandable in light of the fact that Diamond Company had hardly anything left to sell, let alone precious stones.

It further appears that on the 23rd of August, 1981, Management sold all of the outstanding stock owned by it in Associates to Kenneth R. Burnside and Robert F. Lee who were and still are, of course, the remaining principals in Management and also in the Diamond Company. The purchase price paid for the stock was $1,000, Mr. Burnside having paid $500 and Mr. Lee the equal amount. As additional consideration for this transfer, Messrs. Burnside and Lee agreed to provide to Management office space, parking, utility services, telephone service, and they also agreed to assume a debt owed to Landmark Union Trust Bank in the amount of $100,000. Messrs. Burnside and Lee also agreed to assume all obligations for current and future operating expenses of Management. It is without dispute that Management never functioned as a business in the conventional sense, had no payroll, did not buy or sell anything; its activity was claimed to have been limited to furnishing services to the Diamond Company and to Associates, services which both entities could have procured directly without the involvement of Management.

Considering the nature of the business of the Diamond Company, especially the goods

involved, the operation was astoundingly loose and lackadaisical. The inventory control was almost non-existent. For instance, there was no way to determine how much inventory was on hand at any given time. Thus, it is not surprising that at one time there was about a quarter-million dollars worth of precious stones unaccounted for, that there were certificates in the safe but no matching stones, that there were some stones with no certificates, and some stones mysteriously disappearing but all of a sudden reappearing; some large stones carried in the inventory turned into four or five smaller stones after having been recut. It further appears from the record that all the principals dealt with the precious stones in a very casual and cavalier fashion; freely gave away precious stones to creditors, some of them relatives, allegedly in payment of debts to attorneys for services rendered or to be rendered. For instance, at one time the Diamond Company had to write off $180,000 as an inventory loss. Not one of the principals appears to have any respect for the corporate integrity of the Diamond Company and used its assets for this personal use, and no one treated the Diamond Company as an entity separate and apart from the individuals, the principals involved in other entities.

If it appears from the foregoing that the affairs of the Diamond Company were conducted in an unorthodox fashion, and its business was conducted more like the business of a roadside fruit stand, at least it had a business, unlike its parent, Management. Management was apparently created for the purpose of some unexplained tax advantage, not of the Diamond Company but of the principals, Messrs. Burnside and Lee. As noted earlier, it had no employees, had no books or records, it did not sell or buy anything and it merely acted as a conduit for furnishing services to its subsidiaries, the Diamond Company and Associates. It had no income, and there is no valid explanation given for the justification of its existence. The assets of Management consisted of its ownership of the corporate stock in the Diamond Company and in Associates, which was sold to Mr. Burnside and Mr. Lee

for the sum of $1,000, the only real consideration received by Management for this transfer. The liabilities of Management are less than $12,000.

These are basically the facts relevant to the issues raised by the Motions filed in both cases, one seeking the appointment of a trustee or an examiner, the other a dismissal or conversion of these two cases into a liquidation under Chapter 7.

■ Considering this last proposition first, since this is the threshold question, there is no doubt that it would be premature to doom the chances of reorganization of the Diamond Company at this early stage of the proceeding. While its chances of survival, especially as a corporation involved in diamonds and precious stones, are precarious to say the least, the remaining principals appear to have the business acumen and sufficient resilience to rebound and breathe life into the Diamond Company. As far as it appears, Management was born in sin and does not deserve more than an expeditious, decent burial. Accordingly, while the Motions to dismiss or to convert are premature at this time with regard to the Diamond Company, it appears to be that a dismissal would be the only sensible resolution of the matter with regard to Management. However, there is no evidence in this record to establish any grounds for dismissal set forth in § 1112(b), therefore, the Motion to Dismiss the case of Management is denied without prejudice with leave granted to reapply for a dismissal if the parties of interest are so deemed to be advised.

■ This leaves for consideration the matter concerning the appointment of an examiner.

The matter is dealt with in § 1104 of the Code which authorizes under appropriate circumstances, the appointment of a trustee or an examiner. Section 1104(a) permits the appointment of an examiner if the court does not order the appointment of a trustee and if such appointment is in the interest of creditors and other parties of interest. The purpose of the appointment is spelled out by the Code and it includes as grounds for appointment allegations of

fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor.

This record leaves no doubt that due to the current status of the Diamond Company, the appointment of a Trustee would not be warranted, especially in light of the fact that the operation of its business is hardly at a discernable level. This does not mean, however, that its affairs are not in dire need of a thorough and pervasive and immediate examination. In light of this record, this Court is satisfied that if there was ever a need and justification for the appointment of an examiner, this is the case.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss or Convert the Diamond Company be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss or Convert the Management Company be, and the same hereby is, denied without prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion to Appoint Trustee or Examiner be, and the same hereby is, granted and a separate order appointing an examiner shall be entered in accordance with the foregoing.