**In re TRACEY SERVICE COMPANY, INC. a/k/a Tracey Hot Point Service, Debtor.**

**Bankruptcy No. 81–02745K.**

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 11, 1982.

Gerald J. McConomy, Philadelphia, Pa., for debtor.

R. Leonard Davis, III, Philadelphia, Pa., for Acar Supply Co.

Anthony Barone, Philadelphia, Pa., trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on a motion by a judgment creditor to convert the case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; or, in the alternative, to appoint a Trustee in the Chapter 11 case. The Court finds that sufficient cause exists for the case to be converted to Chapter 7. An Order will be entered converting the case and appointing an Interim Trustee pursuant to § 701.[1]

1. This Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.

The factual background of this case is somewhat involved. An involuntary petition under Chapter 7 of the Code was filed on July 13, 1981.[2] One of the petitioning creditors was Acar Supply Co., which has filed the instant motion. On August 3, 1981, the debtor filed a praecipe to convert the case to Chapter 11 pursuant to § 706(a).

The Schedules and Statement of Affairs of the debtor should have been filed within fifteen (15) days of the conversion.[3] Several applications for extensions of time to file these documents were granted. The final extension required these documents to be filed by October 2, 1981. Said documents were not filed until October 26, 1981.

Acar Supply Co. had, meanwhile, filed a motion on September 16, 1981, to convert the case to Chapter 7 or for the appointment of a Trustee. A hearing on the motion was scheduled for October 22, 1981, and continued to October 27, 1981. On that date, testimony was taken in part, and the hearing was continued to November 23, 1981. Upon completion of testimony at the continued hearing, counsel for the debtor and Acar were directed by the Court to file proposed findings of fact, conclusions of law, and memoranda of law.

The debtor-in-possession in a Chapter 11 case is required to file monthly operating statements.[4] In this case, the statements for August, September and October were not filed until November 23, 1981, although they have been filed regularly since that time.

A plan of reorganization and a disclosure statement have yet to be filed by the debtor-in-possession. It has been over five (5) months since the case was converted and the exclusive period, provided by the Code, for the debtor to file a plan of reorganization has expired.[5]

The motion filed by Acar asserts several grounds in support of the motion. There are four (4) bases under which conversion is sought.[6] First, it is averred that the debtor is not an extant, viable business concern. Acar alleges that the debtor has already been dissolved and liquidated by a forced sale of most of the debtor's assets, instigated by the major secured creditors of the corporation. Second, it is alleged that the debtor will be unable to propose and effectuate a plan of reorganization under Chapter 11. Third, the movant alleges that there is a continuing loss to the debtor's estate. Fourth, it is alleged that there was no likelihood of rehabilitation. Therefore, Acar asserts that the case should be converted to Chapter 7 pursuant to § 1112(b) of the Bankruptcy Code.

Acar has also asserted that a trustee should be appointed in the Chapter 11 case, if the case is not converted. It is alleged that current management of the debtor was incompetent and had grossly mismanaged the affairs of the debtor in prior years. The Court will order the case to be converted to Chapter 7, therefore, it will not be necessary to approach this issue.

The debtor denied all the above allegations raised by Acar. It is asserted that an operating subsidiary of the debtor is conducting business at a profit. Furthermore, there are other assets of the debtor which can be used in formulating a Chapter 11 plan. The debtor maintains that it could be reorganized as a holding company which could be profitably operated to finance a repayment plan.

---

**2.** 11 U.S.C. § 303(a).

**3.** Interim Rule 1007(d).

**4.** Bankruptcy Rule 11–30 and Local Bankruptcy Rule 11-4.

**5.** 11 U.S.C. § 1121(b).

**6.** 11 U.S.C. § 1112(b) provides in pertinent part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors.

Hearing on this motion was conducted on two (2) different days. Acar called several witnesses, including an officer of the major secured creditor, a former employee of the debtor corporation and the chief executive officer of the debtor.[7] Furthermore, a large number of documents were introduced into evidence.

The debtor has not been engaged in active operation since early 1980. At one time, the debtor had twenty-five (25) employees, however, only the chief executive officer is presently involved in the company's affairs. The debtor's inventory has been disposed of at public auction. Furthermore, nearly all of the machinery and equipment have also been sold. The premises used in the operation of the debtor's business was sold at sheriff's sale. Three (3) other parcels of real estate were also sold. The funds realized by these sales were applied against the debts owed to the major secured creditors.

Financially, the debtor seems to be in disastrous shape. The debtor is not generating any current income. None of the debtor's accounts receivable are due subsequent to December 31, 1980. Apparently, there remains a substantial amount of receivables awaiting collection efforts.[8] The debtor's balance sheet for 1979 showed a negative net worth. No more recent statement was introduced. All records of the debtor were lost when various property was sold at a distress sale. Finally, Continental Bank is the major secured creditor, with approximately a $500,000 obligation, on which interest continues to accrue.[9]

Several assets of the debtor have yet to be liquidated. There is accounts receivable of approximately $50,000 awaiting collection efforts. There are between eight and ten trucks encumbered by Continental Bank; pursuant to relief sought in adversary proceeding No. 81–1305K, these vehicles will be repossessed by the secured creditor. The debtor corporation also holds title to the residence of the chief executive officer of the company. It is alleged that efforts are being made to sell the property for between $450,000 and $500,000. This asset is not owned free and clear. Furthermore, the president is very unclear as to which creditors are secured in the premises and for what amounts. The only other asset owned by the debtor is stock in an operating subsidiary corporation, Tracy Mechanical, Inc. The debtor holds 80% of the stock in this entity; the stock, however, is in possession of the United States Marshal for this District, and is the subject of litigation in the United States District Court. Also, it is alleged that the stock is pledged to Continental Bank, the major secured creditor in this case.

Originally, the debtor was involved in the installation of heating and air conditioning units in residential housing. The debtor has not been engaged in this business since early 1980. A former employee of the debtor has started his own company and is involved in servicing many of the debtor's former customers. The debtor corporation presently has no premises, no inventory, no equipment, no employees, no office, and no business phone. It is difficult to imagine a more difficult situation in which to formulate a plan of reorganization.

The president and sole shareholder of the debtor is the only person who could be said to be working for the debtor in any capacity. All of the assets are encumbered and others are also subject to litigation. All records were lost in a distress sale. Nevertheless, it is alleged that the debtor can be successfully reorganized as a holding company. The subsidiary will be used to generate profits to pay off the debts of the

---

7. The president is also the sole shareholder of Tracey Services Company, Inc., the debtor herein.

8. The Schedules filed by the debtor list $499,-609.46 in accounts receivable as an asset of the estate. Continental Bank is shown to be secured in these receivables.

9. The Schedules filed by the debtor show that there is $114,176.67 in priority claims; $575,-606.44 in secured claims; and $475,346.94 in unsecured claims.

parent. Although a value was not placed on the ownership interest, the debtor alleges it to be of substantial value because of the potential income from anticipated profits. The debtor claims that the former unprofitable limbs of the corporation have been amputated. The profitable aspect will be retained to act as the so-called "profitable core" of the corporation. Once this is accomplished, new economic life will blossom forth from the old tree.

The debtor asserts that such a reorganization is proper relief obtainable under Chapter 11 and quotes a leading commentator on Bankruptcy law as follows:

> In certain cases, a debtor will have several profitable divisions and will undertake to dispose of the unprofitable portion of its business in order to successfully reorganize. In such a case, the debtor should be afforded a reasonable period of time to liquidate the portion of its business which forced the debtor into chapter 11.

5 *Collier on Bankruptcy* ¶ 1112.03(d)(1) (15th ed.) at 1112–15. The debtor maintains, therefore, that the case should continue in Chapter 11 until the so-called "holding company" can formulate a plan to repay the creditors of the original corporation.

■ It is true that the Bankruptcy Court should not precipitously sound the death knell for a Chapter 11 debtor by prematurely converting or dismissing the case. *In re Shockley Forest Industries, Inc.*, 5 B.R. 160 (Bkrtcy., N.D.Ga.1980). A Chapter 11 debtor-in-possession should be granted a reasonable time to prepare a plan of reorganization. *In re Nielsen*, 6 B.R. 82 (Bkrtcy., N.D.Ala.1980); *In re American Mariner Industries, Inc.*, 10 B.R. 711 (Bkrtcy., C.D.Calif.1981).

In the case at bar, however, the creditor has alleged that there is no likelihood of rehabilitation. In addition, the movant must show a continuing loss to the estate. *In re Alves Photo Service, Inc.*, 6 B.R. 690 (Bkrtcy., D.Mass.1980). The burden of showing that there is a diminution of the estate is on the creditor seeking relief. *In re Union County Wholesale Tobacco, Etc.*, 8 B.R. 439 (Bkrtcy., D.N.J.1981).

In this case, interest continues to accrue on the secured debt. Most of the property of the debtor was liquidated prior to the filing of this petition under Title 11. There is no showing that any of the accounts receivable are being collected. The major secured creditor has sought relief from the stay against certain property. The remaining assets are also encumbered. The debtor is not presently generating any income.[10] The subsidiary has only made minor payments on the debt of the parent and only to the major secured creditor.

The only reason that there is not a substantial loss in this case is the fact that there is no operation of any business. The activities of the debtor corporation itself have been at a standstill since 1980. Only the subsidiary continues to operate. The debtor's ownership in this subsidiary, however, is the subject of both litigation and an encumbrance. All other assets are also encumbered. It is difficult to envision a possible and feasible plan of reorganization.

The Court finds, therefore, that the movant in this case has demonstrated that there is a continuing diminution of the estate and that there is an absence of any reasonable likelihood of reorganization. *See* 11 U.S.C. § 1112(b)(1).

■ If no reorganization is likely, the Court should convert the case to Chapter 7. *In re L. S. Good & Co.*, 8 B.R. 310 (Bkrtcy., N.D.W.Va.1980); *In re First Lewis Road Apartments, Inc.*, 11 B.R. 576 (Bkrtcy., E.D. Va.1981). Without a reasonable amount of assets and a feasibly operating business, there is no logic in continuing under Chapter 11. *In re Eden Associates*, 13 B.R. 578 (Bkrtcy., S.D.N.Y.1981). Unless there is a feasible attempt to reorganize the debtor-in-possession, Chapter 11 cases should be converted to Chapter 7. *In re Larmar Estates, Inc.*, 6 B.R. 933 (Bkrtcy., E.D.N.Y. 1980). The debtor-in-possession should not continue operation once rehabilitation is found to be unrealistic. *L. S. Good, supra.*

---

10. The monthly operating statements filed by the debtor report no income for the debtor.

To establish a reasonable likelihood of reorganization, the proposed rehabilitation must be more than a nebulous venture. *In re K. C. Marsh Co., Inc.*, 12 B.R. 401 (Bkrtcy., D.Mass.1981).

The Court finds that there is no realistic possibility of rehabilitating this debtor. Although the Court understands the reluctance of the president of the corporation to surrender a business which has existed for twenty-five (25) years, reality must be confronted. The reasoning advanced by the counsel for the debtor is well-taken.

The facts of this case, however, do not support their position. Therefore, in accordance with this Opinion, the case will be converted to Chapter 7 and an Interim Trustee will be appointed.