**In re ECONOMY CAB & TOOL COMPANY, INC., a Minnesota Corporation, Debtor.**

**Bankruptcy No. 5–84–88.**

United States Bankruptcy Court,
D. Minnesota,
Fifth Division.

Oct. 31, 1984.

722

John A. Hedback, Minneapolis, Minn., for U.S. Trustee.

Shawn M. Dunlevy, Duluth, Minn., for movant.

James J. Bang, Duluth, Minn., for debtor.

Michael A. Ronchetti, Duluth, Minn., for unsecured creditors committee.

GREGORY F. KISHEL, Bankruptcy Judge.

The above-captioned matter came on before the undersigned United States Bankruptcy Judge on October 19, 1984, upon the Motion of General Motors Acceptance Corporation (hereinafter "Movant"), to convert this case to a proceeding for liquidation under Chapter 7. Movant appeared by its attorney, Shawn M. Dunlevy. Debtor appeared by its attorney, James J. Bang. The Unsecured Creditors Committee appeared by its attorney, Michael A. Ronchetti. The Office of the United States Trustee appeared by the written Affidavit of John A. Hedback, attorney to the U.S. Trustee. Upon the testimony adduced at the hearing, the moving documents submitted by counsel for all parties, and all of the other files, records, and proceedings herein, the Court makes the following Findings of Fact and Order.

### FINDINGS OF FACT

Debtor Economy Cab & Tool Company, Inc. filed its Petition under Chapter 11 of the Bankruptcy Code in this Court on March 28, 1984. Since then Debtor has regularly filed all of the written reports required by the Office of the United States Trustee, including statements summarizing profit and loss, aging of accounts, periodic cash flow, and tax accrual. Movant and the attorney for the U.S. Trustee relied upon the information disclosed in these statements as the basis for their respective Motions. Movant has moved the Court for an Order converting the case to a liquidation proceeding under Chapter 7. The United States Trustee supports Movant's Motion for conversion. He has requested the Court to either convert or dismiss the case, as may be in the best interest of creditors or to set a deadline for filing and

confirmation of a Plan of Reorganization. Though the attorney for the U.S. Trustee did not present a formal Motion to this effect, the request set forth in his Affidavit will be treated as a Motion.

Debtor is in the business of metal fabrication and manufacture. Its operations are focused on the manufacture of special cabs for heavy equipment, the manufacture of an electric sauna heater, the performance of metal fabricating contracts with various entities of the United States Government and the partial assembly of bridge cranes. Debtor presently employs fifteen people at its Esko, Minnesota plant. It has no fixed long-term production and supply contracts which would furnish it with regular income. Rather, it is dependent on the influx of orders generated by its publicity efforts, referrals from past customers, and its own successful bidding on government contracts as they are opened. A substantial portion of its business is generated by contracts with the United States Government; during the past year it has performed substantial work on contracts with the Department of Defense and the United States Fish and Wildlife Service. Debtor's business and generation of income fluctuate on a seasonal basis; its cab manufacturing operations are busiest from September until February and its sauna heater manufacturing operations are busiest in the summer months.

Debtor has operated as a Debtor-in-possession for over six months. Debtor's monthly profit and loss statements filed during this period reveal that it has enjoyed four months in which it made a net profit, varying from $363.20 up to $5,481.59. During the months of July and August, 1984, it incurred a net loss of, respectively, $2,276.39 and $4,026.02. During this period Debtor's new accounts payable have steadily increased to a total of $12,250.20, as of September 30, 1984. During this same time period, however, Debtor has performed work which has generated accounts receivable of a total of $69,099.11. Debtor's bookkeeper, Don Buchholz, did not include these accounts receivable on the reports prior to those of September 30, 1984, out of confusion as to whether an unbilled receivable for work in progress should be included. These accounts receivable include the United States Fish and Wildlife Service. Debtor has performed work and expended funds for materials and labor on this contract for several months but has billed it in full only upon completion of the work on September 30, 1984. This single account receivable is in the sum of $50,650.00. Debtor's president, Donald Gustafson, anticipates that this account will be paid within thirty days of the initial billing.

As of September 30, 1984, Debtor has accumulated post-petition accounts payable of $12,250.20. It has also accumulated $17,546.90 of post-petition income, sales, and Social Security tax liability. Mr. Buchholz and Mr. Gustafson acknowledge that these sums have been withheld from employee wages and sales but not paid over. The amounts so derived have been used to purchase materials for several major contracts, as an alternative to obtaining post-petition financing. Mr. Gustafson testified that the federal and state taxes and a substantial number of the aged accounts payable would be paid in full upon receipt of the payment on the United States Fish and Wildlife Service account. Debtor further anticipates receipt of payment on another United States Government contract in the approximate amount of $15,000.00 within twenty days of approval by the government agency of the product to be produced.

As of September 30, 1984, Debtor's accounts receivable exceeded its tax liabilities and accounts payable by $39,302.01.

Debtor's major consumer product is an electric sauna heater, which Mr. Gustafson alleges can be produced by Debtor for a retail price of approximately one-half of the price of comparable heaters currently on the market. Since the filing of Debtor's Petition, Debtor has made an intensive effort to market this product throughout the states of Minnesota, Michigan, and North Dakota, and is currently selling forty to fifty of these heaters per month. Debtor's

average per-unit profit on this product is $70.00. Debtor projects sales of up to one hundred units of this product per month by April, 1985, based on its intensive sales and marketing activity and projections from the growth of sales thus far. Debtor has $47,000.00 worth of firm orders for cab manufacture at present, work which will be completed within the next six weeks. Debtor presented no evidence on projections for cab manufacture beyond that point, but Mr. Gustafson did testify that Debtor is entering its busy season for this sort of work.

## DISCUSSION

The statute to be applied on this Motion is 11 U.S.C. § 1112(b), which provides in pertinent part as follows:

> ... [O]n request of a party in interest, and after notice and a hearing, the Court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors...

■■■ In considering any Motion under Section 1112(b), the Court must begin by recognizing that the stated purpose of Chapter 11 is to further the rehabilitation of businesses in economic distress. "A Court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor." *In Re Shockley Forest Industries, Inc.,* 5 B.R. 160, 162 (Bankr.N.D.Ga.1980). As a result, Section 1112(b) requires a party moving for dismissal or conversion to show cause. The determination of whether cause has been shown or not rests in the sound discretion of the Court. *In Re Levinsky,* 23 B.R. 210 (Bankr.E.D.N.Y.1982); *In Re L.S. Good & Co.,* 8 B.R. 310, 3 C.B.C.2d 75 (Bankr.N.D. W.Va.1980). The burden of proof in a Motion for conversion or dismissal rests squarely upon the moving party. *In Re Earth Services, Inc.,* 27 B.R. 698 (Bankr.D. Vt.1983); *In Re Karl A. Neise, Inc.,* 16 B.R. 602 (Bankr.S.D.Fla.1981). A moving party discharges this burden by demonstrating the existence of one of the nine statutory grounds enumerated under Section 1112(b), or by showing other cause.[1]

■■■ To show cause under Section 1112(b)(1), a moving party must demonstrate that there is both a continuing loss to or diminution of the estate *and* absence of a reasonable likelihood of rehabilitation. *In Re Garland Corp.,* 6 B.R. 456 (Bankr. 1st Cir.1980); *In Re Karl A. Neise, Inc., supra; In Re Steak Loft of Oakdale, Inc.,* 10 B.R. 182, 4 C.B.C.2d 45, 49 (Bankr.E.D. N.Y.1981). To determine whether a moving party has proved continuing loss to or diminution of the estate, the Court must look beyond the bare form of the debtor's filed reports and the form of its financial statements. Financial statements may have been prepared for the purpose of income tax authorities. The Court must look beyond the facial inadequacies of the information supplied by these forms and must make a full evaluation of the present condition of the estate. *See, e.g., In Re Powell Bros. Ice Co.,* 37 B.R. 104, 10 C.B.C.2d 328 (Bankr.D.Kans.1984). At early stages in the proceedings, in order to prove "absence of a reasonable likelihood of rehabilitation" a moving party must show that there is no more than a "hopeless and unrealistic prospect" of rehabilitation. *In Re Steak Loft of Oakdale, Inc., supra,* at 49, 10 B.R.

---

**1.** The nine enumerated statutory grounds are not exclusive; for instance, a reorganization proceeding can be converted or dismissed upon a showing of lack of good faith by the debtor in its filing. S.REP. 95–989, 95th Cong.2d Sess. 117 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In Re Levinsky, supra; In Re Tolco Properties, Inc.,* 6 B.R. 482 (Bankr.D.Va.1980); *In Re Modern Office Supply, Inc.,* 28 B.R. 943 (Bankr.D.Okla.1983).

182.[2] Courts have found a sufficient likelihood of rehabilitation where the debtor's own projections show a "near certainty of *short-term* operating losses", *In Re Garland Corp., supra,* at 460 (emphasis added); and, in an extreme case, even where apparent chances of survival are "precarious", so long as the remaining corporate principals have "business acumen and sufficient resilience" to build the business back up, *In Re Burnside, Lee & Harris Diamond Co.,* 17 B.R. 104 (Bankr.N.D.Fla. 1981).

Under Section 1112(b)(2), the moving party must show that a debtor lacks all ability to formulate or carry out a plan. The courts have usually limited application of this ground to cases where a debtor was little other than a corporate shell lacking a place of business, employees, payroll, or discernible economic activity. *See, e.g., In Re Larmar Estates, Inc.,* 6 B.R. 933 (Bankr.E.D.N.Y.1980); *In Re Tracey Service Co., Inc.,* 17 B.R. 405, 409 (Bankr.E.D. Pa.1982). Where a debtor is carrying on some business activity, this ground is not properly argued or applied before a plan is filed, when the debtor's ability to accomplish the plan first can be gauged.

Under Section 1112(b)(3), the moving party must show unreasonable delay by the debtor that has resulted in actual prejudice to creditors. Obviously, where a debtor has not yet filed its Disclosure Statement and Plan of Reorganization the major delay of which a creditor can complain would be the debtor's delay in filing these documents. However, where debtor's period of 120 days during which it held the exclusive right to file a plan has only recently run, and a moving party has failed to show prejudice resulting from the failure to timely file or other prejudicial conduct, the moving party has failed to show cause under Section 1112(b)(3). *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 106 at n. 4 (2d Cir.1982); *In Re Nielsen,* 6 Bankr. 83 (Bankr.N.D.Ala.1980). Where a debtor has been an "apparently viable" business, it must be given a reasonable amount of time to work out an arrangement with its creditors. *In Re Bonded Mailings, Inc.,* 20 Bankr. 781 (Bankr.E.D. N.Y.1982).

In the case at bar, the Court can consider only the factors set forth under Sections 1112(b)(1), 1112(b)(2), and 1112(b)(3) because Debtor has not yet filed its Plan of Reorganization. Movant has failed to show cause for dismissal or conversion of this case under any of these sections and its Motion must be denied.

Conversion or dismissal is not mandated under Section 1112(b)(1). Prior to the reports for the period ending September 30, 1984, Debtor failed to include any accounts receivable generated for work in progress on its reports. One could scarcely fault Movant and the U.S. Trustee for concluding that Debtor was running a deficit administration; post-petition payroll and sales taxes were not being paid promptly, numerous accounts payable went over a thirty-days-past-due status, and the reports were showing marginal amounts of profit at best. However, when Debtor's failure to prepare the reports adequately was remedied, and when work in progress was completed and billed out, a truer picture of the status of Debtor's estate emerged. Debtor is apparently operating at at least a modest level of profit and will have a surplus of some size once its current receivables are paid. Movant has complained that the truck which it holds as security on its debt is constantly depreciating. However, Movant has failed to produce hard evidence of the amount of depreciation, and, in any event, failed to seek adequate protection in the form of periodic payments from Debtor when it made a Motion for Relief from Stay earlier in these proceedings. Therefore, it cannot be held to complain in the context of this Motion that its security is depreciating. Both Movant and the Office of the U.S. Trustee have failed to show a loss to or

---

**2.** It is well-established that the "rehabilitation" of the second element under Section 1112(b)(1) means something more than "reorganization" as "reorganization" may include orderly liquidation under control of the debtor. Rather, rehabilitation means "to put back into good condition; to re-establish on a firm sound basis". *In Re L.S. Good & Co.,* 8 B.R. 310, 3 C.B.C.2d 785 (Bankr.N.D.W.Va.1980); *In Re Kors, Inc.,* 13 B.R. 676, 5 C.B.C.2d 190 (Bankr.D.Vt.1981).

726

diminution of Debtor's estate. Further, they have failed to show that Debtor has no more than a hopeless and unrealistic chance of rehabilitation. Though many questions (particularly the status of the contract between Debtor and the United States Department of Defense) remain to be answered, it cannot be said at this stage of the proceedings that Debtor's attempts at rehabilitation are or will be hopeless.[3]

Movant has likewise failed to show cause under Section 1112(b)(2). Because Debtor is an active, ongoing concern, generating some amount of profit, it cannot be said that Debtor may not have the ability to formulate or carry out a plan. Because Debtor's plan is still being formulated, application of this ground for conversion or dismissal is premature.

Lastly, Movant has failed to show cause under Section 1112(b)(3). Debtor's period of exclusivity has only recently run out, and Movant and the Office of the U.S. Trustee have shown no other unreasonable delay that has resulted in actual prejudice to any creditor. Movant's concerns about its security are more appropriately addressed in a renewed Motion for Relief from Stay.

 However, the Bankruptcy Code affirmatively requires a debtor to make a concerted effort to reorganize and/or rehabilitate its business operations and to file a Plan of Reorganization "as soon as practicable". 11 U.S.C. 1107(a) and 1106(a)(5). Debtor has already enjoyed the manifest protections of the automatic stay for over six months. Its attorney has advised the Court that he, Mr. Gustafson, and an accountant have been working on the plan for over a month, and that a plan can be completed and filed with the Court by November 15, 1984. Other Courts have dismissed or converted reorganization proceedings where debtors have enjoyed the protections

of the automatic stay for like periods of time without making any progress toward formulation of a plan. *See, e.g., In Re Larmar Estates, supra; In Re CCN Realty Corp.,* 23 Bankr. 261 (Bankr.S.D.N.Y. 1982). Because Debtor's attorney has advised the Court that a Disclosure Statement and plan can be filed by November 15, 1984, the Court will hold him and Debtor to their word and will so order. Debtor and its attorney are reminded that failure to propose a plan within any time fixed by the Court can and will constitute grounds for conversion or dismissal under Section 1112(b)(4).

WHEREFORE, IT IS HEREBY ORDERED:

1. That the Motions of Movant and the United States Trustee for conversion or dismissal of these proceedings are hereby denied;

2. That Debtor shall file its Disclosure Statement and Plan of Reorganization in this Court no later than 4:30 p.m. on November 15, 1984.

---

**3.** In so holding, the Court is not condoning Debtor's deliberate accumulation of tax liability and diversion of tax withholdings to finance its operations on a short-term basis. Debtor would have been better advised to seek short-term financing than to "dip into" these funds, over which it has a fiduciary duty of administration. Movant's attorney argued that Debtor had failed

to show that fresh capital was available for its reorganization. In the absence of a showing by Movant that such capital is necessary, Debtor has no such burden. Fresh capital may well be necessary for the success of Debtor's long-term plan, but this issue has not been joined properly and probably should not be raised until after the plan has been filed.