**In re Rudolph KLENOSKY, d/b/a Queens Center Realty, Debtor.**

**No. 91 CV 899.**

United States District Court, E.D. New York.

Aug. 8, 1991.

Raymond J. Aab, New York City, for debtor.

Robert J. Musso, Brooklyn, N.Y., Trustee.

## MEMORANDUM and OPINION

BARTELS, District Judge.

This matter is before the Court on debtor Rudolph Klenosky's ("Klenosky") appeal from an order of the bankruptcy court, Judge Marvin A. Holland, dated October 11, 1990, converting Klenosky's Chapter 11 case to a case under Chapter 7 (the "Order").[1] On February 15, 1991, Judge Holland denied Klenosky's motion to vacate the Order. Klenosky argues that this Court must vacate the Order because the bankruptcy court acted improperly by converting the case *sua sponte* or, alternatively, assuming the bankruptcy court had the power to *sua sponte* convert the case, it abused its discretion in so doing.

## BACKGROUND

Threatened with the specter of numerous judgments against him, Klenosky, a former attorney who was suspended from the practice of law in 1989, and who also allegedly suffers from advanced Alzheimer's disease, voluntarily filed a petition (the "Petition") pursuant to Chapter 11 of the Bankruptcy Code (the "Code") on March 14, 1990. In his Petition, Klenosky declared his total assets to be $433,710. However, for all intents and purposes, this is a single asset case; a combined two family residence and commercial store front building at 671 Manhattan Avenue, Brooklyn, New York, (the "Property") which Klenosky, without any supporting documentation, valued at $375,000. Klenosky and his family reside in one of the apartments. The second apartment has been vacant for over one year. In addition, although the commercial store front had been rented, the store was vacant and the tenant was in default at the time the Petition was filed. Prior to filing the Petition, Klenosky executed two contracts, one to sell the Property, and another to purchase a house in Great Neck, New York. Finally, Klenosky stated that, with the exception of the executory contract to sell the Property, he had no other source of potential income.

Klenosky estimated his total debt at $105,634.15, all of which he alleged is unsecured. However, he failed to schedule at least one claim, that of Peter Pychinski ("Pychinski"), a judgment creditor[2], who estimates his claim against the estate to be $515,600. In addition to Pychinski's claim, Klenosky was the named defendant in

---

1. Mr. Klenosky was represented at all times by an attorney.

2. Pychinski was awarded partial summary judgment against Klenosky in New York State Supreme Court, Queens County, on his causes of action for breach of fiduciary duty, legal malpractice, fraud and deceit, violation of Section 487 of the Judiciary Law, and conversion. The matter was set down for an inquest, however, prior to the hearing date, Klenosky filed the Petition which stayed the proceeding.

three other state court actions (which he did schedule) arising out of his representation of clients in real estate transactions while he was still practicing law. The aggregate of these claims, which Klenosky disputes, represent the vast majority of the claims against the estate. According to his affidavit sworn to March 12, 1990, Klenosky intended to satisfy his creditors' claims from the proceeds of the sale of his real estate, presumably the Property.

Klenosky failed to appear at at least two scheduled creditors' meetings. He was examined on one occasion, June 26, 1990, but apparently was unable to verify that he had opened debtor-in-possession accounts, maintained insurance on the Property, or filed adequate operating and income statements. On June 25, 1990, Klenosky filed the first, and only, operating statement with the bankruptcy court, wherein he averred that he had no income and no expenses, and that he was physically and mentally unable to work.

On September 19, 1990, Pychinski filed an order to show cause, returnable October 3, 1990, why the case should not be dismissed ("Pychinski's motion"). At the time, Klenosky had neither offered nor filed a plan of reorganization. He remained in possession of the estate. No creditors committee, trustee or examiner had been appointed. Pychinski cited a myriad of grounds for dismissal under § 1112(b) of the Code, including: (1) the continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) inability to effectuate a plan; (3) unreasonable delay prejudicing creditors; (4) failure to propose a plan; (5) failure to attend regularly scheduled creditors' meetings; (6) failure to file monthly operating statements and open a debtor in possession bank account in violation of Local Bankruptcy Rules; and (7) failure to insure the Property.

Thereafter, on September 26, 1990, at a regularly scheduled status conference at which some of the creditors were present, Klenosky's attorney acknowledged (1) that Klenosky had failed to file the necessary operating statements; and (2) that Klenosky intended to file amended schedules reflecting monthly income of $430 from social security disability payments, additional creditors, and an additional asset, i.e., a parcel of land in New Jersey to which Klenosky claimed part ownership, and which he valued, without supporting documentation, at $60,000. Klenosky's attorney also made an unsubstantiated claimed that the Property had increased in value to $450,000 since Klenosky filed the Petition. Finally, Klenosky's attorney stated, that although no plan had been offered since the Petition was filed six months earlier, he, the attorney, "would like to sit down with the creditors." [3] Klenosky's attorney also stated that he was optimistic that he could "work something out[,]" [4] but he "[couldn't] really put dollars on the table until [he knew] how much [he had] in the pot." [5]

On September 26, 1990, Judge Holland ordered Klenosky to file a plan of reorganization by October 26, 1990.

On September 28, 1990, M/A Realty Corp. ("M/A Realty"), a creditor alleging it is an equitable lien holder,[6] filed an affidavit in opposition to Pychinski's motion and sought instead to convert the case to a case under Chapter 7. Like Pychinski, M/A Realty cited Klenosky's failure to attend creditor's meetings, his failure to insure the Property, his failure to file or offer a plan of reorganization, and the diminution of the estate and the absence of a reasonable likliehood of rehabilitation as cause for the conversion. Unlike Pychinski, M/A Realty argued that dismissal would serve no beneficial purpose; whereas, a Chapter 7 trustee would immediately insure the Property, thereby protecting the only asset in the

3. Transcript of Status Conference, September 26, 1990, (hereinafter "Tr.") at p. 7.

4. Id.

5. Id.

6. M/A Realty claims that Klenosky converted $45,000.00 from an escrow account established in connection with the sale of the Property.

estate, and begin proceedings to auction the Property.

## DISCUSSION

### I. *Procedural Infirmity*

 Klenosky argues that since Pychinski only moved to dismiss the case rather than to convert to a case under Chapter 7, the bankruptcy court acted *sua sponte* when it ordered the conversion. Thus, under the rule of *In re Gusam Restaurant Corp.*, 737 F.2d 274, 276 (2d Cir.1984), Klenosky concludes that the Order must be vacated.

Klenosky's argument is without merit. His reliance on *In re Gusam Restaurant* is misplaced because, unlike that case, in the instant case Pychinski, perhaps the largest creditor, caused to be served on all parties an order to show cause seeking dismissal of the case. However, even if the cases were not distinguishable, the continued viability of *In re Gusam Restaurant* is called into question by the 1986 amendment to section 105(a) of the Code, which provides that "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to ... prevent an abuse of process." *See* 5 Collier on Bankruptcy, § 1112.01 n. 3a (15th ed. 1979).

The legislative history of Section 1112(b)[7] reveals that Congress intended to give "wide discretion to the [bankruptcy] court to make an appropriate disposition of the case when a party in interest requests." House Report No. 95–595, 1st Cong., 1st Sess. 405 (1977) *reprinted in* [1978] U.S.Code Cong. and Admin.News, pp. 5787, 5963, 6361; *accord In re Larmar Estates*, 6 B.R. 933, 937 (E.D.N.Y.1980). It is undisputed that Pychinski is a "party in interest." Nor is there any genuine question that the Order issued "after notice and hearing."[8]

 Furthermore, the bankruptcy court has the power to convert a Chapter 11 case when a party in interest has only moved to dismiss. *In re Larmar Estates*, 6 B.R. at 937. "The determining factor, is not whether a party in interest has requested a conversion or dismissal, but rather whether dismissal or conversion will be in the best interest of creditors and the estate." *Id.; see generally* 5 *Collier on Bankruptcy*, § 1112.03[d][iv] (15th ed. 1979).

The only remaining issue is whether the bankruptcy court abused its discretion in converting the case to a case under Chapter 7.

### II *Grounds For Conversion*

 In its capacity as an appellate court, the district court " 'must accept the findings of fact [of the bankruptcy court] unless they are clearly erroneous,' but will reverse if 'left with the definite and firm conviction that a mistake has been committed.' " *In re Lomas Financial Corp.*, 117 B.R. 64, 66 (S.D.N.Y.1990) (quoting *Manville Forest Products Corp.–Gulf States Exploration Co. v. Manville Forest*, 896 F.2d 1384, 1388 (2d Cir.1990)). Conclusions of law are reviewed *de novo. Id.*

 Unfortunately, because of the inadvertent destruction of the transcript of the evidentiary hearing before Judge Holland on October 3, 1990, the record before this

---

**7.** Section 1112(b) of the Code reads, in relevant part, "on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate...."

**8.** At the September 26, status conference Klenosky's counsel referred to Pychinski's motion as a motion to "dismiss or convert." Accordingly, it is clear that he was aware of the possibility that the case might be converted. *Cf. In re Baker Oil Well Services, Inc.*, Nos. 89–4232–S, 87–41489–

7c, 1991 WL 49722 (D.Kan. March 5, 1991) (LEXIS, Genfed library, Dist file) (debtor had adequate notice of possible conversion where creditor filed motion to dismiss and bankruptcy judge indicated at a status conference that he was considering ruling on the motion to dismiss/convert upon the pleadings). Furthermore, Judge Holland advised Klenosky's counsel that Pychinski's motion would be heard on October 3, 1990, unless all parties agreed to an adjournment. Klenosky's counsel concedes that he did not secure consent from all parties.

Court is incomplete. Accordingly, the Court can not determine if the bankruptcy court abused its discretion in converting the case. Therefore, the Court orders the case remanded to Judge Holland to make the necessary findings of fact and conclusions of law.

SO ORDERED.